IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | | |
|---|---|---|
| STEVE RIDDICK, | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 7:20cv00562 |
| | ) | |
| v. | ) | **MEMORANDUM OPINION** |
| | ) | |
| RAEANN KEGLEY, *et al.*, | ) | By:   Hon. Thomas T. Cullen |
| | ) |       United States District Judge |
| Defendants. | ) | |

Plaintiff Steve Riddick, an inmate in the custody of the Virginia Department of Corrections ("VDOC") proceeding *pro se*, filed this civil rights complaint under 42 U.S.C. § 1983. His complaint names three defendants—Raeann Kegley, Larry Mullins, and Shannon Fuller.[1] Although the defendants interpret his complaint as raising four claims, the court finds that, when properly construed, it raises only two.[2] First, Riddick asserts a retaliation claim against defendant Kegley, claiming that she filed a false disciplinary charge against him to retaliate for his filing an informal complaint about her, in violation of his First Amendment rights. Second, Riddick asserts that, during the disciplinary hearing on that charge—which resulted in a sustained finding and a $12 fine as the sole penalty—hearing officer Mullins violated his right to due process by denying him the opportunity to call witnesses or obtain

---

[1] Riddick initially named Warden Kiser as the third defendant, but later amended his complaint and substituted Fuller for Kiser. (ECF No. 3.)

[2] As defendants note in their summary judgment motion, Riddick's complaint refers to "deliberate indifference" and the Eighth Amendment, but those claims are based solely on the denial of due process and are more appropriately viewed as claims alleging a violation of his Fourteenth Amendment due process rights. Thus, any claims based on the Eighth Amendment fail as a matter of law.

witness statements. He further alleges that Fuller violated his due process rights by upholding Mullins's decision, including the decision to disallow Riddick's requested witness statements.

Riddick asserts claims against all defendants in both their individual and official capacities. His complaint seeks damages only; he does not seek declaratory or injunctive relief. But in his briefing, he requests that his disciplinary conviction be "dismissed." (Pl.'s Opp'n to Mot. Summ. J. 8 [ECF No. 29].)

Pending before the court is a motion for summary judgment filed by all defendants. (ECF No. 36.) In it, they argue that defendant Kegley is entitled to summary judgment because Riddick failed to exhaust his administrative remedies regarding his retaliation claim, as required by the Prison Litigation Reform Act ("PLRA"). As to the due process claims, they contend that: (1) the claims fail because a $ 12 fine does not trigger any constitutionally protected liberty or property interest; (2) Riddick was not denied his due process rights because his request for witnesses did not comply with VDOC's reasonable procedural requirement that they be requested within 48 hours of a charge being served; and (3) Mullins and Fuller are entitled to qualified immunity as to the claims against them.[3]

Riddick filed a response in opposition. (ECF No. 39.) He also filed a one-page document asserting an additional argument about exhaustion, which has been docketed as "Additional Evidence." (ECF No. 60.) This latest document was filed long beyond the time

---

[3] Defendants' summary judgment motion also includes other grounds for relief, but based on its rulings below, the court need not address them. These additional grounds include that: (1) official-capacity claims for damages are barred by Eleventh Amendment immunity; and (2) Riddick may not recover damages in the absence of a physical injury, pursuant to 42 U.S.C. § 1997e(e), which prohibits a federal action "for mental or emotional injury suffered while in custody without a prior showing of physical injury." (Defs.' Mem. Support Mot. Summ. J. 13–14 [ECF No. 37].)

for briefing and the court treats it as an unauthorized supplemental opposition, as Riddick never sought leave to file it.[4]

Also pending before the court are two motions for summary judgment filed by Riddick. One seeks summary judgment on his retaliation claim (ECF No. 27), and the other seeks summary judgment on his due process claims (ECF No. 25). Although Riddick has styled both as summary judgment motions, neither motion contains a statement of undisputed facts with specific record citations, as required by the local rules. *See* W.D. Va. Civ. R. 56. More accurately described, they are simply brief summaries of the claims in his complaint, and they include statements explaining why he believes he is entitled to relief.

For the reasons set forth herein, the court will grant the defendants' motion for summary judgment and deny Riddick's motion for summary judgment.

## I.

In determining what facts are undisputed for purposes of summary judgment, the court has considered the affidavits submitted by the defendants, which are from Kegley and two non-defendants—C. Meade and K. Ramey. Evidence in the summary judgment record also includes Riddick's opposition, which he has signed under penalty of perjury (ECF No. 39 at 8), and his own motions for summary judgment, also signed under penalty of perjury (ECF Nos. 25, 27). Riddick's complaint, however, is unverified. Thus, the facts in it need not be considered as summary judgment evidence. *See Goodman v. Diggs*, 986 F.3d 493, 498 (4th Cir. 2021) (explaining that a *pro se* prisoner's *verified* complaint is the equivalent of an opposing

---

[4] Because it is unauthorized, the court does not consider it. Even if the court did consider his argument—which is based on unsworn statements and does not point to any evidence or documents in support—it would not change the court's ruling.

affidavit for summary judgment purposes when the allegations are based on personal knowledge, but an unverified complaint is not).

On September 12, 2019, Kegley filed a disciplinary offense report against Riddick, charging him with threatening bodily harm to any person verbally—offense code 212—under Operating Procedure ("OP") 861.1 (Aff. of C. Ramey ¶ 6 & Ex. B, Dec. 20, 2021 [ECF 37-3].) Riddick was served with the charge on September 13, 2019 and informed of his disciplinary hearing rights. (*Id.*) This included advising him that any *Witness Request Form* had to be submitted "to the Hearings Officer within **48-HOURS** of the charge being served." (*Id.* (emphasis in original).)

Riddick submitted a request for witnesses on a form that he dated September 13, 2019 but placed in the mail on September 15, 2019. The form was stamped as received by the hearings officer on September 18, 2019. (*Id.*) At the disciplinary hearing, Mullins, the assigned hearing officer, denied the request for witnesses because it was not submitted by the 48-hour deadline. At the conclusion of the hearing, Mullins found Riddick guilty of the offense and imposed a $12 fine as the sole penalty. Riddick appealed that decision, which was upheld by defendant Fuller. (Ramey Aff., Ex. C.)

With regard to the claim that Kegley retaliated against him, Riddick was required to use VDOC's grievance procedure to administratively exhaust that claim, and he did not do so. (Aff. of C. Meade ¶¶ 11–12, Dec. 28, 2021, & Ex. A, OP 866.1 [ECF No. 37-1].) As Meade explains, OP 866.1 governs the inmate grievance procedure and provides that retaliation

complaints are grievable.[5] (Meade Aff. ¶ 12.)

## II.

Under Rule 56 of the Federal Rules of Civil Procedure, the court must "grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A dispute is genuine if 'a reasonable jury could return a verdict for the nonmoving party.'" *Libertarian Party of Va. v. Judd*, 718 F.3d 308, 313 (4th Cir. 2013) (quoting *Dulaney v. Packaging Corp. of Am.*, 673 F.3d 323, 330 (4th Cir. 2012)). "A fact is material if it 'might affect the outcome of the suit under the governing law.'" *Id.* (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248–49(1986)).

When ruling on a motion for summary judgment, the court must view the evidence in the light most favorable to the nonmoving party. *Tolan v. Cotton*, 572 U.S. 650, 657 (2014) (per curiam). To withstand a summary judgment motion, the nonmoving party must produce sufficient evidence from which a reasonable jury could return a verdict in his favor. *Anderson*, 477 U.S. at 248. "Conclusory or speculative allegations do not suffice, nor does a mere scintilla of evidence in support of the nonmoving party's case." *Thompson v. Potomac Elec. Power Co.*, 312 F.3d 645, 649 (4th Cir. 2002) (cleaned up).

## III.

### A.

The court first addresses Riddick's retaliation claim and his alleged failure to exhaust it. Under the PLRA, "[n]o action shall be brought with respect to prison conditions under section

---

[5] Meade also notes that Riddick has previously grieved other alleged retaliatory actions against him (Meade Aff. ¶ 13), although Riddick disputes this (Opp'n at 4).

1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). "[E]xhaustion is mandatory under the PLRA and . . . unexhausted claims cannot be brought in court." *Jones v. Bock*, 549 U.S. 199, 211 (2007) (citing *Porter v. Nussle*, 534 U.S. 516, 524 (2002)). A prisoner must exhaust all available administrative remedies, whether they meet federal standards or are plain, speedy, or effective. *Davis v. Stanford*, 382 F. Supp. 2d 814, 818 (E.D. Va. 2005). Even if exhaustion would be futile because those remedies would not provide the relief the inmate seeks, it is nonetheless required. *Id.* Ordinarily, an inmate must follow the required procedural steps to exhaust his administrative remedies. *Moore v. Bennette*, 517 F.3d 717, 725 & 729 (4th Cir. 2008); *see also Langford v. Couch*, 50 F. Supp. 2d 544, 548 (E.D. Va. 1999) ("[T]he second PLRA amendment made clear that exhaustion is now mandatory."). An inmate's failure to follow the required procedures of the prison's administrative remedy process, including time limits, or to exhaust all levels of administrative review is not "proper exhaustion" and will bar the claim. *Woodford v. Ngo*, 548 U.S. 81, 85, 90 (2006).

In assessing an exhaustion defense, the court is "obligated to ensure that any defects in administrative exhaustion were not procured from the action or inaction of prison officials." *Aquilar-Avellaveda v. Terrell*, 478 F.3d 1223, 1225 (10th Cir. 2007); *see Kaba v. Stepp*, 458 F.3d 678, 684 (7th Cir. 2006). This is because an inmate need only exhaust "available" remedies. 42 U.S.C. § 1997e(a). An administrative remedy is not available "if a prisoner, through no fault of his own, was prevented from availing himself of it." *Moore*, 517 F.3d at 725.

Here, it is undisputed that Riddick did not file any informal complaints or regular grievances about any alleged retaliation by Kegley. Thus, he did not exhaust his administrative remedies. Riddick argues, though, that the system was not available. He contends that a claim that an officer retaliated against him because he filed an *informal complaint*, as opposed to a regular grievance, is not grievable. (Opp'n 2-3.) Riddick further argues that, based on some of the language and certain subheadings in OP 866.1, there are different sections for the "grievance procedure" and for "informal complaints," and that the procedure only prohibits reprisal based on the filing of grievances. Riddick therefore argues that a grievance for this specific claim of retaliation was not available to him. (Opp'n 3.)

For several reasons, Riddick is incorrect. First, Meade's affidavit explicitly states that a retaliation claim is grievable, making no distinction between retaliation based on a regular grievance and one based on an informal complaint. (Meade Aff. ¶ 12.) Meade is the Institutional Grievance Coordinator at Red Onion State Prison and offers testimony based on personal knowledge and records maintained by VDOC. (*Id.*, ¶¶ 1–2.)

Second, Riddick's reading of the relevant Operating Procedure is incorrect. The entire OP is titled "Offender Grievance Procedure." (Meade Aff., Ex. A, at 1.) There are sections titled "Offender Grievance Procedure" (§ IV), "Informal Complaint Procedure" (§ V), "Regular Grievance Procedure" (§ VI), and "Emergency Grievances (§ VII). Based on the plain text of the Operating Procedure, it is clear that Section IV refers to the entire procedure and the entire OP, which includes—effectively as subsets—procedures for "informal complaints," "regular grievances," and "emergency grievances."

"Reprisal" is defined in OP 866.1 as "[a]ny action or threat of action against anyone for good faith use of or good faith participation in the grievance procedure." OP 866.1, § III. That definition does not distinguish between "informal complaints" and "regular grievances." The reprisal concept is explained in Section IV-F, again under the general heading of the "Offender Grievance Procedure"—not just the sections dealing with informal complaints or regular grievances:

> F. Reprisals
>
> 1. Offenders shall not suffer reprisals for filing grievances in good faith. Neither employees nor offenders participating in the resolution of grievances should be subject to reprisal in any form.
>
> 2. An offender may pursue a complaint of reprisal through the *Offender Grievance Procedure.*

OP 866.1, § IV-F. Based on its inclusion in Section IV, under the general heading, the language prohibiting reprisals applies to the entire grievance procedure, nor just one portion of it, such as regular grievances. The word "grievance" plainly refers to all types of grievances, including informal complaints, regular complaints, and emergency grievances.

This interpretation of the policy text is consistent with the policy's overall structure. Section IV-M, where it states that "[r]eprisals against the grievant for filing a grievance or grievance appeal" are grievable. Even if that were not sufficient to encompass a reprisal for filing an informal complaint, the policy also includes a catch-all provision of grievable matters. That provision states that "any other matters relating to conditions or care of supervision within the authority of the DOC which affect the grievant personally" are also grievable, with the exception of the list of "non-grievable matters." The "non-grievable" list includes four

items, none of which would render a reprisal for filing an informal complaint non-grievable.[6] Thus, under the plain language of that catch-all section, and because it is not specifically excluded, reprisal or retaliation based on the filing of an informal complaint is plainly grievable.

In short, based on the plain language of OP 866, as well as its structure, the court concludes that an alleged reprisal occurring in response to an informal complaint (as opposed to a regular grievance) is grievable. Riddick's arguments to the contrary are unavailing. Because Riddick was required to grieve the alleged retaliation and failed to do so, the court will dismiss his retaliation claim against Kegley for failure to exhaust.

**B.**

The court turns next to Riddick's claim that the denial of his requested witnesses violated his Fourteenth Amendment right to procedural due process. Due process protections are triggered only when a constitutionally protected liberty or property interest is at stake. *Prieto v. Clarke*, 780 F.3d 245, 248 (4th Cir. 2015). Indeed, a plaintiff must identify a sufficient liberty or property interest before the court examines whether the procedures were constitutionally sufficient. *Kentucky Dep't of Corr. v. Thompson*, 490 U.S. 454, 460 (1989). The Supreme Court has explained that an inmate can demonstrate a protected interest by showing an "atypical and significant hardship . . . in relation to ordinary incidents of prison life." *Sandin v. Conner*, 515 U.S. 472, 484 (1995).

---

[6] The four items are: (1) "Disciplinary hearing decisions and penalties and/or procedural errors . . . "; (2) "State and Federal court decisions, laws and regulations;" (3) "Policies, procedures and decisions of the Parole Board, Board of Corrections, Virginia Department of Transportation (VDOT), and other agencies"; and (4) "Other matters beyond the control of the DOC." OP 866.1, § IV-M-2.

Here, the sole penalty imposed on Riddick was a $12 fine. Such a minimal fine does not implicate a constitutionally protected property or liberty interest. While neither the Supreme Court nor the Fourth Circuit has specified the threshold at which the Due Process Clause is implicated when it comes to monetary fines, several Judges in this district have held that small monetary fines assessed at disciplinary hearings do not trigger due process protections. *See, e.g.*, *Allen v. Fields,* No. 7:21-cv-00207, 2022 WL 4485181, at *4 (W.D. Va. Sept. 27, 2022) (dismissing due process claim where penalty was a $15 fine); *Roscoe v. Mullins*, No. 7:18CV00132, 2019 WL 4280057, at *3 (W.D. Va. Sept. 10, 2019) (granting summary judgment in defendants' favor as to the due process claim where the only penalty was a $15 fine), *aff'd on other grounds*, No. 19-7343 (4th Cir. Oct. 28, 2020); *Ferguson v. Messer*, No. 7:15cv00140, 2017 WL 1200915, at *8 (W.D. Va. Mar. 30, 2017) (concluding that three $12 fines did not give rise to a protected property interest); *Bratcher v. Mathena*, No. 7:15cv00500, 2016 WL 4250500, at *1 (W.D. Va. Aug. 10, 2016) (finding $12 fine did not impose an atypical and significant hardship on the plaintiff in comparison to the ordinary incidents of prison life and so did not constitute a property interest). *But see Bowling v. Clarke*, No. 7:19cv00453, 2020 WL 4340944, at *5 (W.D. Va. July 28, 2020) (denying summary judgment and noting that, "[a]rguably, however, the imposition of that fine, which was deducted from [the plaintiff's] inmate account after an allegedly defective disciplinary hearing, constituted the deprivation of a protected property interest without due process").

Consistent with this persuasive authority, the court concludes that Riddick's $12 fine was not an "atypical and significant hardship" that triggered due process protections. *See Sandin*, 515 U.S. at 484. As it did in *Allen*, this "court declines to examine the sufficiency of

the process afforded to [Riddick] at the disciplinary hearing" "because [he] has failed to allege a protected liberty or property interest that was implicated by Defendants' actions." *Allen*, 2022 WL 4485181, at *5. *See Kentucky Dep't of Corr.*, 490 U.S. at 460. Instead, the court will grant the motion for summary judgment as to Riddick's due process claims.[7]

### IV.

As noted, Riddick has filed two summary judgment motions of his own. Not only are both motions deficient in failing to identify undisputed facts or point to portions of the record in support, *see* W.D. Va. Civ. R. 56, but they require the court to view the evidence in the light most favorable to defendants. So viewed, Riddick's motion must be denied for the same reasons that defendants' motion must be granted: the undisputed facts show that he failed to exhaust his retaliation claim, and his $12 fine as a penalty did not trigger constitutional due process protections.

---

[7] Even if a $12 fine triggered a due process right, Mullins and Fuller would nevertheless be entitled to qualified immunity. The doctrine of qualified immunity protects government officials from liability for civil damages "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009). To determine whether an official is entitled to qualified immunity, the court must first determine whether the facts, taken in the light most favorable to the plaintiff, show that the defendant's conduct violated a constitutional right. *Smith v. Ray*, 781 F.3d 95, 100 (4th Cir. 2015). Second, the court must evaluate whether the right was clearly established at the time of the defendant's conduct. *Smith*, 781 F.3d at 100. As discussed previously, judges of this district have determined that $12 and $15 fines assessed at disciplinary hearings do not trigger due process. Moreover, neither the Fourth Circuit nor the Supreme Court has held that the imposition of a $12 fine for a disciplinary infraction triggers due process concerns. It follows that no reasonable official would have known of any possible violation of constitutional rights even if this court were to conclude that imposing such a fine in this instance gave rise to one. *See, e.g., Allen*, 2022 WL 4485181, at *5 n.4 (holding same); *Bowling v. Clarke*, No. 7:19cv00453, 2021 WL 440794, at *3, *5 (W.D. Va. Feb. 8, 2021) (reaffirming an earlier ruling that a $15 fine triggered due process protections but concluding that defendants were nevertheless entitled to qualified immunity on this issue).

## V.

For the reasons set forth above, the court will grant defendants' motion for summary judgment, and will deny Riddick's motions for summary judgment.

The Clerk is directed to send a copy of this Memorandum Opinion and accompanying Order to the parties.

**ENTERED** this 2nd day of March, 2023.

*/s/ Thomas T. Cullen*
HON. THOMAS T. CULLEN
UNITED STATES DISTRICT JUDGE